UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| **Kendra Haley,** | Civil Action No.:_____ |
| **Plaintiff,** | |
| v. | **COMPLAINT** |
| **Prosper Marketplace, Inc.,** | **JURY TRIAL DEMANDED** |
| **Defendant.** | |

## COMPLAINT

1. This is an action brought by Plaintiff, Kendra Haley, for actual, statutory, and punitive damages, attorneys' fees, and costs for Defendant's violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* (hereinafter "FCRA").

2. The FCRA exists to protect consumers' privacy and to impose upon those who trade in consumers' private information strict requirements to ensure that the information they report is as accurate as possible.

3. Before the enactment of the FCRA, inaccurate and misleading information was identified as "the most serious problem in the credit reporting industry." 115 Cong. Rec. 2411 (Jan. 31, 1969). With this problem in mind, Congress enacted the FCRA "to prevent consumers from being unjustly damaged because of inaccurate or arbitrary information in a credit report." S. Rep. No. 91-517 (1969).

4. To accomplish Congress' goals, the FCRA contains a variety of requirements to protect consumers, including §§ 1681c and 1681e, which are two of the cornerstone

1

provisions of the FCRA.

5. One of the primary purposes of the FCRA is to assure "maximum possible accuracy" of consumer information to ensure the stability of our banking system:

> The banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system.

*See* 15 U.S.C. § 1681(a)(1).

6. The preservation of one's good name and reputation is also at the heart of the FCRA's purposes:

> [W]ith the trend toward computerization of billings and the establishment of all sorts of computerized data banks, the individual is in great danger of having his life and character reduced to impersonal "blips" and key-punch holes in a stolid and unthinking machine which can literally ruin his reputation without cause, and make him unemployable or uninsurable, as well as *deny him the opportunity to obtain a mortgage or buy a home. We are not nearly as much concerned over the possible mistaken turn-down of a consumer for a luxury item as we are over the possible destruction of his good name without his knowledge and without reason. * * * [A]s Shakespeare said, the loss of one's good name is beyond price and makes one poor indeed* (emphasis added).

*Bryant v. TRW, Inc.*, 689 F.2d 72, 79 (6th Cir. 1982) [quoting 116 Cong. Rec. 36570 (1970)].

## JURISDICTION AND VENUE

7. This Court has Jurisdiction under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §1681p, and 28 U.S.C. §1331 and §1332.

8. Venue is proper in the Florence Division because the Plaintiff resides in Florence County and the Defendant transacted business in this division.

## PARTIES

9.  Plaintiff, Kendra Haley, is a resident and citizen of the State of South Carolina, Florence County, and is over the age of twenty-one (21) years. Plaintiff is a consumer as that term is defined by the FCRA, 15 U.S.C. §1681a(c).

10. Defendant Prosper Marketplace, Inc. ("Prosper") is a Delaware company registered to do business in South Carolina with the South Carolina Secretary of State. Defendant may be served with process through its registered agent for service of process, Corporation Service Company, 508 Meeting St., West Columbia, SC 29169. At all times and in all respects relevant herein, Defendant was doing business in the state of South Carolina and in this division.

## FACTUAL ALLEGATIONS

11. On or about October 14, 2022, Defendant called Plaintiff regarding a past due Loan on her cell phone while she was at work. Plaintiff was shocked by the call and specifically told Defendant she knew nothing about a Loan and that she did not have any loans with Defendant. When the call ended, Plaintiff immediately called her husband, Kyle Haley.

12. That same day, when Plaintiff returned home from work, she learned that, since the death of one of their infant twins, her husband had developed a gambling addiction and that he had been opening lines of credit in Plaintiff's name without her knowledge or consent. Specifically, Kyle had opened a Loan, Loan number 1704225 (hereinafter referred to as the "Loan"), with Defendant on January 17, 2022, in the amount of $15,000. Said Loan began reporting as past due as of September 2022.

13. On October 15, 2022, Plaintiff filed a police report with the Florence County

Sheriff's Office regarding this Loan being fraudulently opened in her name, as well as several other accounts.

14.     On or about October 21, 2022, Plaintiff called Defendant and alerted it that the Loan was fraudulently opened in her name without her knowledge or permission. At that time, Defendant informed Plaintiff that its Fraud Department would get in touch with her.

15.     On October 25, 2022, Plaintiff emailed Defendant a copy of the police report she had filed regarding the theft of her identity and the opening of numerous fraudulent accounts.

16.     On October 28, 2022, Plaintiff filled out and submitted a Federal Trade Commission ID Theft Report.

17.     On November 2, 2022, Plaintiff mailed a copy of the ID Theft Report and police report to Defendant.

18.     On November 4, 2022, Defendant emailed Plaintiff offering an 80% payment reduction plan and settlement. Defendant's email also informed Plaintiff that the Loan account had been past due since August 30, 2022, and that a payment was due on or before November 30, 2022.

19.     On November 24, 2022, Defendant emailed Plaintiff stating "Your payment is now 86 days **past due**, and a late fee has been charged to your account. Please make a payment of $1,184.22 to bring your account current."

20.     Four days later, on November 28, 2022, Defendant again emailed Plaintiff that the Loan was delinquent and in jeopardy of being charged off as a bad debt.

21.     On November 30, 2022, Defendant emailed Plaintiff a reminder that the Loan was

past due.

22.     On December 2, 2022, more than 30 days after Plaintiff initially informed Defendant that the Loan was fraudulently opened in her name and provided it with a copy of her ID Theft Report and the filed police report, Defendant emailed Plaintiff stating that it was continuing to review her claim that the Loan was issued fraudulently. Defendant informed Plaintiff that "in order to assist with [their] investigation", it was requesting copies of her bank statements for the months of January 2022 through September 2022 for both of her bank accounts.

23.     On or about December 2, 2022, Plaintiff sent a dispute letter to TransUnion stating the Loan had been fraudulently opened in Plaintiff's name without her authorization ("First TransUnion Dispute"). Plaintiff stated that her husband had opened numerous accounts, including the Loan, in her name, without her knowledge or permission, to feed his gambling addiction. With her dispute, Plaintiff included her name, address, date of birth, and Social Security number. TransUnion received this dispute on December 19, 2022, and forwarded same to Defendant.

24.     On or about December 2, 2022, Plaintiff sent a dispute letter to Experian stating the Loan had been fraudulently opened in Plaintiff's name without her authorization ("First Experian Dispute"). Plaintiff stated that her husband had opened numerous accounts, including the Loan, in her name, without her knowledge or permission, to feed his gambling addiction. With her dispute, Plaintiff included her name, address, date of birth, and Social Security number. Experian received this dispute on December 19, 2022, and, upon information and belief, forwarded same to Defendant.

25. On December 4, 2022, despite having already received a copy of the Plaintiff's police report and informing Plaintiff that it was still investigating her claim the Loan was opened fraudulently, Defendant again emailed Plaintiff offering a settlement on the past due Loan and requesting that she call to discuss re-payment options.

26. On or about December 12, 2022, Plaintiff sent a dispute letter to Equifax stating the Loan had been fraudulently opened in Plaintiff's name without her authorization ("First Equifax Dispute"). Plaintiff stated that her husband had opened numerous accounts, including the Loan, in her name, without her knowledge or permission, to feed his gambling addiction. With her dispute, Plaintiff included her name, address, date of birth, and Social Security number.

27. On December 12, 2022, Plaintiff emailed Defendant copies of all of the requested bank statements so Defendant would continue its fraud investigation.

28. Defendant claimed it did not receive the requested bank statements. So, on December 16, 2022, Plaintiff again emailed Defendant copies of all of the requested bank statements.

29. When Plaintiff tried to verify a second time that Defendant had received the bank statements and that the loan had been closed due to fraud, Defendant again claimed it had not received the bank statement.

30. On December 19, 2022, Plaintiff emailed Defendant copies of all of the requested bank statements for a third time.

31. On December 23, 2022, Defendant's employee Tyler called Plaintiff wanting to do a three-way call with her and USAA. Tyler told Plaintiff that this was the final part of

Defendant's investigation. Tyler attempted the call, but the representative at USAA was not available.

32.  On or about December 25, 2022, in response to the First Equifax Dispute, Equifax sent Plaintiff correspondence in which Equifax stated it could not locate Plaintiff's credit file and so, in order to provide further assistance, Equifax needed a copy of Plaintiff's driver's license and Social Security card. Plaintiff complied with Equifax's request and mailed the sought after information via certified mail. On or about January 18, 2023, Equifax received the requested information and, upon information and belief, was able to locate Plaintiff's credit file and forwarded the First Equifax Dispute to Defendant.

33.  On or about December 29, 2022, Defendant responded to Experian's ACDV verifying the disputed information on the Loan was accurate and updating some additional information. As a result of Defendant's response to Experian, the disputed Loan continued to report on Plaintiff's Experian credit report as belonging to her.

34.  On or about January 11, 2023, Plaintiff received the results of Defendant's alleged investigation into the First TransUnion Dispute. Defendant verified and continued to report the Loan as belonging to Plaintiff on her TransUnion credit report.

35.  On or about January 20, 2023, Plaintiff received the results of Defendant's alleged investigation into the First Equifax Dispute. Defendant verified and continued to report the Loan as belonging to Plaintiff on her Equifax credit report.

36.  In January, Plaintiff contacted Tyler to again verify that nothing else was needed in order to close the Loan as fraudulent. Defendant never notified Plaintiff that it needed anything further to complete its investigation regarding the Loan.

37. On or about February 28, 2023, Plaintiff sent a second dispute to Equifax stating that the Loan had been fraudulently opened in Plaintiff's name without her authorization ("Second Equifax Dispute"). Plaintiff again stated that her husband had opened numerous accounts, including the Loan, in her name, without her knowledge or permission, to feed his gambling addiction. With her dispute, Plaintiff again included her name, address, date of birth, and Social Security number. On or about March 7, 2023, Equifax received the Second Equifax Dispute and forwarded same to Defendant.

38. On or about February 28, 2023, Plaintiff sent a second dispute to TransUnion stating that the Loan had been fraudulently opened in Plaintiff's name without her authorization ("Second TransUnion Dispute"). Plaintiff again stated the Loan had been opened in her name without her knowledge or permission. With her dispute, Plaintiff again included her name, address, date of birth, and Social Security number. On or about March 6, 2023, TransUnion received the Second TransUnion Dispute and, upon information and belief, forwarded same to Defendant.

39. On or about February 28, 2023, Plaintiff sent a second dispute to Experian stating that the Loan had been fraudulently opened in Plaintiff's name without her authorization ("Second Experian Dispute"). Plaintiff again stated that her husband had opened numerous accounts, including the Loan, in her name, without her knowledge or permission, to feed his gambling addiction. With her dispute, Plaintiff again included her name, address, date of birth, and Social Security number. On or about March 6, 2023, Experian received the Second Experian Dispute and forwarded same to Defendant.

40. On or about March 9, 2023, Plaintiff received correspondence from TransUnion in which TransUnion stated it would not be investigating her dispute of Defendant's Loan as it had already investigated said Loan and Defendant had verified the Loan as accurate.

41. On or about March 13, 2023, Plaintiff received the results of Defendant's alleged investigation into her Second Equifax Dispute verifying the Loan as reporting accurately. As a result, the Loan continued to be reported as belonging to Plaintiff on her Equifax credit file.

42. On or about March 14, 2023, Defendant responded to Experian's ACDV verifying the disputed information as accurate and simply updating the balance date and adding an original date of delinquency. As a result, the Loan continued to be reported as belonging to Plaintiff on her Experian credit file.

43. On or about March 27, 2023, Plaintiff sent another dispute to Equifax which again stated that Plaintiff had been the victim of identity theft and fraud and that the Loan was not her account ("Third Equifax Dispute"). With this dispute, Plaintiff included the police report she filed which stated that Plaintiff's husband had taken out this Loan, as well as several other loans, in Plaintiff's name to fund his gambling addiction. The police report stated that Plaintiff's husband had admitted these actions in a "three-page paper" and that same had been taken into evidence. On or about April 4, 2023, Equifax received the Third Equifax Dispute and forwarded same, including a copy of the police report, to Defendant.

44. On or about March 27, 2023, Plaintiff sent another dispute to TransUnion which again stated that Plaintiff had been the victim of identity theft and fraud and that the Loan was not her account ("Third TransUnion Dispute"). With this dispute, Plaintiff included

the police report she filed which stated that Plaintiff's husband had taken out this Loan, as well as several other loans, in Plaintiff's name to fund his gambling addiction. The police report stated that Plaintiff's husband had admitted his actions in a "three-page paper" and that same had been taken into evidence. On or about April 3, 2023, TransUnion received the Third TransUnion Dispute and forwarded same, including a copy of the police report, to Defendant.

45.     On or about March 28, 2023, Plaintiff sent another dispute to Experian which again stated that Plaintiff had been the victim of identity theft and fraud and that the Loan was not her account ("Third Experian Dispute"). With this dispute, Plaintiff included the police report she filed which stated that Plaintiff's husband had taken out this Loan, as well as several other loans, in Plaintiff's name to fund his gambling addiction. The police report stated that Plaintiff's husband had admitted his actions in a "three-page paper" and that same had been taken into evidence. On or about April 3, 2023, Experian received the Third Experian Dispute and forwarded same, including a copy of the police report, to Defendant.

46.     On April 11, 2023, Defendant responded to Experian's ACDV verifying the Loan account as accurate. As a result, the Loan continued to be reported as belonging to Plaintiff on Plaintiff's Experian credit file.

47.     On or about April 20, 2023, Plaintiff received TransUnion's Investigation Results wherein TransUnion informed her that, because Defendant had previously verified the Loan as accurate and updated certain information, TransUnion would not be further investigating the Loan. As a result, the Loan continued to be reported on Plaintiff's TransUnion credit report as belonging to Plaintiff and being a delinquent, charged-off debt.

48.     On or about May 19, 2023, Plaintiff sent her fourth and final dispute letter to Experian wherein she again stated that she had been the victim of identity theft and fraud and that the Loan was not her account ("Fourth Experian Dispute").  Plaintiff again included a copy of her police report.  On or about May 24, 2023, Experian received the Plaintiff's Fourth Experian Dispute.

49.     On May 29, 2023, Experian forwarded Plaintiff's dispute letter, along with the police report, via ACDV to Defendant.  The very next day, Defendant responded to Experian's ACDV verifying the disputed Loan information as accurate and updating other account information.  As a result of Defendant's verification of the Loan as accurate, the Loan continued to be reported on Plaintiff's Experian credit report as belonging to Plaintiff. Additionally, the Loan continued to be reported as a delinquent, charged-off account.

50.     On or about May 19, 2023, Plaintiff sent a fourth dispute to TransUnion wherein she again disputed the Loan as fraudulent.  Plaintiff also specifically disputed a hard inquiry from Defendant as fraudulent and specifically informed TransUnion that she had not applied for credit with Defendant.

51.     TransUnion received a copy of Plaintiff's Fourth Dispute on May 22, 2023.  On or about July 18, 2023, Plaintiff received a letter from TransUnion stating that it had received Plaintiff's dispute regarding the Loan, but, because Defendant had previously verified the Loan as accurate, TransUnion would no longer be conducting any investigation of the disputed Loan.

52.     On or about July 28, 2023, TransUnion also forwarded Plaintiff a copy of her current TransUnion credit report which continued to report the fraudulent Loan as belonging to

11

Plaintiff, being charged off, and having a past due balance of $15,231.

53. In total, Defendant received at least ten (10) ACDVs from the consumer reporting agencies regarding Plaintiff's dispute of the Loan as fraudulent. As a result, Defendant had at least ten (10) opportunities to properly investigate Plaintiff's dispute and correct the inaccurate information it was reporting. Defendant failed to do so.

54. To date, Defendant continues to inaccurately report the Loan as belonging to Plaintiff on all of her credit reports. Additionally, Defendant continues to report the Loan as a delinquent, charged-off debt with a balance in excess of $15,231.

55. Defendant's knowing and repeated violations of the FCRA warrants an award of punitive damages. *See, e.g., Younger v. Experian Info. Sols. Inc.,* Case No. 2:15-cv-00952-SGC, at *30 (N.D. Ala. Mar. 21, 2019) (awarding punitive damages for repeated, willful violations of the FCRA).

## **COUNT ONE**
### **(Fair Credit Reporting Act)**

56. The Plaintiff adopts the averments and allegations of paragraphs 11 through 55 hereinbefore as if fully set forth herein.

57. Defendant violated 15 U.S.C. §1681s-2(b) by failing to investigate the accuracy of the information reported by the Defendant to the consumer reporting agencies.

58. On at least one occasion within the past two years, by example only and without limitation, Defendant violated 15 U.S.C. §1681s-2(b)(1)(A) by failing to fully and properly investigate after receiving notice that the Plaintiff disputed the information said Defendant had provided to a consumer reporting agency.

59.    On at least one occasion within the past two years, by example only and without limitation, Defendant violated 15 U.S.C. §1681s-2(b)(1)(B) by failing to review all relevant information provided by the consumer reporting agencies.

60.    As a result of Defendant's violations of 15 U.S.C. §1681s-2(b)(1)(A) and (B), Plaintiff suffered actual damages, including but not limited to: damage to reputation and credit reputation, lost credit opportunities, increase in insurance costs, feelings of hopelessness, embarrassment, humiliation, frustration, anxiety, loss of sleep, worry, physical sickness and pain including a dramatic increase in blood pressure, and mental anguish.

61.    The law in this District, the Fourth Circuit, and even nationally has long ago been articulated to require a detailed and searching investigation by a furnisher when it receives a consumer's FCRA dispute through a consumer reporting agency.

62.    Defendant completely failed and/or refused to conduct a detailed and searching inquiry as required by the FCRA.  Instead, Defendant simply verified the Loan each and every time it received an ACDV regarding Plaintiff's dispute of the Loan as fraudulent.

63.    The violations by Defendant were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.  In the alternative, Defendant was negligent, entitling the Plaintiff to recovery under 15 U.S.C. §1681o.

64.    Plaintiff is entitled to recover actual damages, statutory damages, punitive damages, costs, and attorneys' fees from Defendant in an amount to be determined by a jury pursuant to 15 U.S.C. §1681n and §1681o.

## COUNT TWO
### (Fair Credit Reporting Act)

65. The Plaintiff adopts the averments and allegations of paragraphs 11 through 64 hereinbefore as if fully set forth herein.

66. On one or more occasions within the past two years, by example only and without limitation, Defendant violated 15 U.S.C. §1681s-2(b)(1)(C) and (D) by publishing the Defendant's inaccuracies within Plaintiff's credit files with the credit reporting agencies by failing to correctly report results of an accurate investigation to each credit reporting agency.

67. Defendant violated 15 U.S.C. §1681s-2(b)(1)(C) by reporting inaccurate, incomplete, false, and misleading results of the investigation, if any, to at least one consumer reporting agency.

68. Defendant violated 15 U.S.C. §1681s-2(b)(1)(D) by failing to notify all consumer reporting agencies that the reporting of the accounts the subject of this action was inaccurate, incomplete, false, and misleading.

69. As a result of Defendant's violations of 15 U.S.C. §1681s-2(b)(1)(C) and (D), the Plaintiff suffered actual damages, including but not limited to: damage to reputation and credit reputation, lost credit opportunities, increase in insurance costs, feelings of hopelessness, embarrassment, humiliation, frustration, anxiety, loss of sleep, worry, physical sickness and pain including a dramatic increase in blood pressure, and mental anguish.

70. The violations by Defendant were willful, rendering it liable for punitive damages

in an amount to be determined by the jury pursuant to 15 U.S.C. §1681n. In the alternative, Defendant was negligent, entitling the Plaintiff to recovery under 15 U.S.C. §1681o.

71. The Plaintiff is entitled to recover actual damages, statutory damages, punitive damages, costs, and attorneys' fees, pursuant to 15 U.S.C. §1681n and §1681o.

## AMOUNT OF DAMAGES DEMANDED

WHEREFORE, PREMISES CONSIDERED, Plaintiff demands a judgment against Defendant for the following:

A. Actual and statutory damages from Defendant pursuant to 15 U.S.C. §1681n(a)(1)(A) and/or 15 U.S.C. §1681o(a)(1);

B. Punitive damages from Defendant pursuant to 15 U.S.C. §1681n(a)(2);

C. Costs and reasonable attorneys' fees from Defendant pursuant to 15 U.S.C. §1681n(a)(3) and/or 15 U.S.C. §1681o(a)(2); and

D. For such other and further relief as the Court may deem just and proper.

*/s/ Penny Hays Cauley*
Penny Hays Cauley, Fed. ID No. 10323
Attorneys for Plaintiff

**OF COUNSEL:**
HAYS CAULEY, P.C.
1303 West Evans Street
Florence, SC 29501
(843) 665-1717
(843) 665-1718 Facsimile
phc917@hayscauley.com

**PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY ON ALL COUNTS**

*/s/ Penny Hays Cauley*
Of Counsel

15

**DEFENDANT TO BE SERVED VIA CERTIFIED MAIL:**

Prosper Marketplace, Inc.
c/o Corporation Service Company, Registered Agent
508 Meeting St.
West Columbia, SC 29169